**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MANOLO BLAHNIK INTERNATIONAL LIMITED, | ) ) ) Case No. 15-cv-9494 |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

Plaintiff Manolo Blahnik International Limited ("MBIL") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the MBIL trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit MBIL products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused MBIL substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by MBIL to combat online counterfeiters who trade upon MBIL's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including footwear, bearing counterfeit versions of federally registered MBIL trademarks (the "Counterfeit MBIL Products"). The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine MBIL products, while actually selling Counterfeit MBIL Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. MBIL is forced to file these actions to combat

Defendants' counterfeiting of the registered MBIL trademarks, as well as to protect unknowing consumers from purchasing Counterfeit MBIL Products over the Internet. MBIL has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable MBIL trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.     The MBIL brand is well-known throughout the United States and elsewhere as one of the world's most influential footwear designers and a source of luxury footwear and handbags for women (the "MBIL Products"). Plaintiff MBIL is the exclusive licensee and distributor of genuine MBIL Products globally and has the exclusive right to use and enforce the MBIL trademarks in the United States. MBIL Products are manufactured exclusively in Italy and are distributed and sold to consumers through authorized retailers including high-end department stores such as Barneys, Neiman Marcus, Nordstrom, Bergdorf Goodman and Saks Fifth Avenue across the country and in Illinois. In addition, MBIL Products are sold online through the official websites for many of the aforementioned retailers. A listing of authorized retailers worldwide is available on the official MBIL website at manoloblahnik.com.

5.     MBIL has continuously sold MBIL Products under the MBIL trademarks in the United States for many years.

6.     In addition to imbuing common law trademark rights, the MBIL trademarks are registered in many countries around the world, including with the United States Patent and Trademark Office (collectively, "the MANOLO BLAHNIK Trademarks," a non-exclusive list of which is included below).

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,373,422 | **MANOLO BLAHNIK** | For:  articles of leather or imitation leather, namely, handbags; holdalls; rucksacks; all-purpose sports bags; boot bags; satchels, wallets; purses; credit card holders; traveling bags; briefcases; key cases and leather key chains, toiletry bags sold empty, and tie cases; umbrellas; parasols in class 018.<br><br>For:  footwear; ladies and children's footwear; men's footwear in class 025.<br><br>For:  retail store services featuring footwear, belts, handbags, holdalls, rucksacks, all purpose sports bags, boot bags, satchels, wallets, purses, credit card holders, traveling bags, briefcases, key cases and leather key chains, bags for containing personal toiletry items, tie cases, umbrellas and parasols in class 035. |
| 1,826,414 | BLAHNIK | For:  footwear in class 025. |
| 3,281,206 | MANOLO | For:  articles of leather or imitation leather, namely, handbags, holdalls, rucksacks, all purpose sports bags, boot bags, satchels, wallets, purses, credit card holders, traveling bags, briefcases, key cases and leather key chains, toiletry bags sold empty, and tie cases; umbrellas; parasols in class 018.<br><br>For:  footwear; ladies and children's footwear; men's footwear, belts in class 025.<br><br>For:  retail store services featuring footwear, belts, handbags, holdalls, rucksacks, all purpose sports bags, boot bags, satchels, wallets, purses, credit card holders, traveling bags, briefcases, key cases and leather key chains, bags for containing personal toiletry items, tie cases, umbrellas and parasols in class 035. |
| 3,289,290 | BLAHNIK | For:  articles of leather or imitation leather, namely, handbags; holdalls; rucksacks; all purpose sports bags; wallets; purses; credit card |

| | | |
|---|---|---|
| | | holders; traveling bags; brief cases; key cases and leather key chains; satchels; bags for personal toiletry items sold empty; tie cases, umbrellas and parasols in class 018.<br><br>For: retail store services featuring footwear, handbags; holdalls; rucksacks; all purpose sports bags; boot bags; wallets; purses; credit card holders; traveling bags; brief cases; key cases and leather key chains; satchels; bags for personal toiletry items; tie cases, umbrellas and parasols in class 035. |
| 4,218,484 | MANOLO BLAHNIK | For: jewellery in class 014.<br><br>For: cardboard boxes in class 016. |
| 3,387,178 | BLAHNIK | For: perfumes; non-medicated toiletries; soaps; cosmetics; cosmetic kits comprised of make-up; hair care preparations; hair cleaning preparations; hair coloring preparations; hair relaxing preparations; hair straightening preparations; hair styling preparations; hair lotions; shampoos; conditioners; deodorants and antiperspirants for personal use; body sprays; talcum powder; after shave lotions; eau de cologne; shaving preparations; non-medicated bath preparations; bath foams; bath oils; bath salts; bath and shower gels; toothpaste; dentifrices; gift sets incorporating some or all of the aforesaid goods; essential oils; potpourri; nail care preparations; facial beauty masks; massage lotions; non-medicated sun care preparations in class 003.<br><br>For: jewellery; amulets; ashtrays of precious metals; badges of precious metal; boxes of precious metals; bracelets; brooches; buckles of precious metals; candelabra of precious metals; candle extinguishers of precious metals; candle rings of precious metals; candlesticks of precious metals; cigarette cases of precious metals; cigar cases of precious metals; presentation cases for watches; purses of precious metal; watch and jewellery chains; chronographs for use as timepieces; cigarette holders of precious metals; tie clips; electric watches; cloisonne jewellery; |

| | | cuff links; watchmaking dials; earrings; figurines; statues and statuettes of precious metal; watchmaking hands; hat ornaments of precious metal; jewel cases of precious metal; key rings made of precious metal; match boxes of precious metal; match holders of precious metal; medals; medallions; necklaces; ornamental pins; jewellery ornaments; jewellery pins; tie pins; rings; shoe ornaments of precious metal; straps for watches; trinkets; watch bands, cases, chains, crystals, glasses and springs; watches; wristwatches; works of art of precious metal in class 014.<br><br>For printed publications, namely, books, brochures, catalogues, handbooks, manuals, magazines, newspapers and periodicals, all in the field of fashion, jewellery, footwear, clothing; printed matter, namely greeting cards, posters, photographs, prints, postcards, notepads, address books, scrapbooks, pictures and diaries; paper; stationery; calendars; bags of paper or plastic; boxes of cardboard in class 016.<br><br>For shoehorns; beverage glassware; brushes for footwear; perfume burners; non-electric candelabra not of precious metal; candle extinguishers not of precious metal; candle rings not of precious metal; candlesticks not of precious metal; china ornaments; enamelled glass; figurines; statues; statuettes and works of art of porcelain, terracotta or glass; painted glassware, namely, baking dishes, bowls, butter dishes, cake stands, carafes, casserole dishes, figurines, ornaments, coasters, coffee services, commemorative plates, cooking pots, dinnerware, drinking cups, flower pots, vases, fruit bowls, goblets, gravy boats, jugs, lazy susan, mugs, piggy banks, ovenware, pepper pots, salt shakers, sugar bowls, plates, doorknobs, pots, saucers, serving dishes, serving platters, serving spoons, serving tongs, serving trays, tea services, urns; polishing leather; porcelain ware, namely, baking dishes, bowls, butter dishes, cake stands, carafes, casserole dishes, figurines, ornaments, coasters, coffee services, commemorative plates, cooking pots, dinnerware, drinking cups, flower pots, |
|---|---|---|

| | | vases, fruit bowls, goblets, gravy boats, jugs, lazy susan, mugs, piggy banks, ovenware, pepper pots, salt shakers, sugar bowls, plates, doorknobs, porcelain eggs, pots, saucers, serving dishes, serving platters, serving spoons, serving tongs, serving trays, tea services, urns; pottery, namely, baking dishes, bowls, butter dishes, cake stands, carafes, casserole dishes, figurines, ornaments, coasters, coffee services, commemorative plates, cooking pots, dinnerware, drinking cups, flower pots, vases, fruit bowls, goblets, gravy boats, jugs, lazy susan, mugs, piggy banks, ovenware, pepper pots, salt shakers, sugar bowls, plates, doorknobs, pots, saucers, serving dishes, serving platters, serving spoons, serving tongs, serving trays, tea services, urns; shoe brushes; shoe trees; fitted vanity cases; non-electric shoe wax applicators not containing shoe wax in class 021.<br><br>For carpets; floor coverings; door mats; mats, namely, bath mats, beach mats, chair mats, in the nature of under-chair floor protectors, cork mats and floor mats; rugs; wallpaper in class 027.<br><br>For: confectionery, namely, chocolate; biscuits; cakes; coffee; tea; cocoa; sugar; rice; tapioca; sago; artificial coffee; flour and preparations made from cereals, namely, processed cereals, ready to eat cereal-derived food bars, breakfast cereals, cereal-based snack food; bread; pastry; ices, namely, flavoured ices and fruit ices; honey; treacle; yeast; baking powder; salt; mustard; vinegar; sauces, spices; ice in class 030. |

7.     The MANOLO BLAHNIK Trademarks have been used exclusively and continuously by MBIL in the United States, some since at least as early as 1983, and have never been abandoned.  True and correct copies of the United States Registration Certificates for the above-listed MANOLO BLAHNIK Trademarks are attached hereto as **Exhibit 1**.  The above U.S. registrations for the MANOLO BLAHNIK Trademarks are valid, subsisting, in full force

and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the MANOLO BLAHNIK Trademarks constitute *prima facie* evidence of their validity and of the exclusive right of the MBIL brand to use the MANOLO BLAHNIK Trademarks pursuant to 1057(b).

8.      MBIL has built substantial goodwill in the MANOLO BLAHNIK Trademarks. As a result, the MANOLO BLAHNIK Trademarks are both famous marks and valuable assets.

9.      The MANOLO BLAHNIK Trademarks are exclusive to the MBIL brand, and are displayed extensively on MBIL Products and in MBIL's marketing and promotional materials. MBIL Products, internationally acclaimed for their elegance and femininity, are among the most famous luxury footwear in the world and have been extensively promoted and advertised at great expense. In fact, MBIL has expended millions of dollars annually in advertising, promoting and marketing featuring the MANOLO BLAHNIK Trademarks. MBIL Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and are renowned as desired luxury items. MBIL Products are a favorite among internationally-known celebrities and the eponymous designer has hand-crafted custom footwear for women including Kate Moss, Victoria Beckham, Naomi Campbell, Rihanna and Sarah Jessica Parker. MBIL Products gained mainstream popularity perhaps most famously through the television show *Sex and the City* whose main character Carrie Bradshaw wore MBIL Products in nearly every episode and, in one episode, begged a mugger to "take my Fendi handbag, my ring and my watch, but please don't take my Manolo Blahniks!" MBIL augments this unsolicited media coverage with extensive paid advertising in upscale, luxury magazines worldwide, such as *Elle* and *Vogue*. Because of these and other factors, the MBIL brand and the MANOLO BLAHNIK Trademarks have become famous throughout the United States.

10.     Mr. Manolo Blahnik has been repeatedly recognized in the fashion world and footwear industry and has been hailed as one of the most successful and influential designers of our time, being honored by the Council of Fashion Designers of America in 1987, 1990 and 1998, and by the British Fashion Council in 1990, 1999 and 2012.  The designer has also been presented with awards including the 2000 Neiman Marcus Award, the 2008 Rodeo Drive Walk of Style Award, the 2011 Footwear News Lifetime Achievement Award, and Spain's 2012 National Fashion Design Award.  MBIL Products were also the subject of a major exhibition at the Design Museum of London in 2003, as well as at the auction house Phillips, de Pury and Luxembourg in New York City in September 2003, and at the Savannah College of Art and Design in Savannah, Georgia from May 2011 to July 2011.

11.     The MANOLO BLAHNIK Trademarks are distinctive when applied to the MBIL Products, signifying to the purchaser that the products come from MBIL and are manufactured to MBIL's quality standards.  Mr. Manolo Blahnik designs and creates every single pair of shoes to ensure that products bearing the MANOLO BLAHNIK Trademarks are manufactured to the highest quality standards.  The MANOLO BLAHNIK Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the MANOLO BLAHNIK Trademarks is of incalculable and inestimable value to MBIL.

12.     MBIL's innovative marketing and product designs have enabled the MBIL brand to achieve widespread recognition and fame, and have made the MANOLO BLAHNIK Trademarks some of the most well-known marks in the luxury footwear industry.  The widespread fame, outstanding reputation, and significant goodwill associated with the MBIL brand have made the MANOLO BLAHNIK Trademarks invaluable assets.

**The Defendants**

13.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit MBIL Products to consumers within the United States, including the State of Illinois.

14.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the MANOLO BLAHNIK Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for MBIL to learn Defendants' true identities and the exact interworking of their counterfeit network.  In the event that Defendants provide additional credible information regarding their identities, MBIL will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

15.     The success of the MBIL brand has resulted in its significant counterfeiting.  Consequently, MBIL has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, MBIL has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress,

including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit MBIL Products to consumers in this Judicial District and throughout the United States. Despite MBIL's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit MBIL Products. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

16. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine MBIL Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the MANOLO BLAHNIK Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Defendants are not licensed or authorized to use any of the MANOLO BLAHNIK Trademarks, nor are Defendants authorized retailers of genuine MBIL Products.

17.     Defendants also deceive unknowing consumers by using the MANOLO BLAHNIK Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MBIL Products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine MBIL Products.  Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.  As such, MBIL also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit MBIL Products.

18.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.  For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states.  Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information.  On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

19.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, Counterfeit MBIL Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit MBIL Products were manufactured by and come from a common source and that Defendants are interrelated.  The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images.

20.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated

that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

21. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of MBIL's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

22. Defendants, without any authorization or license from MBIL, have knowingly and willfully used and continue to use the MANOLO BLAHNIK Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit MBIL Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit MBIL Products into the United States, including Illinois.

23. Defendants' use of the MANOLO BLAHNIK Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit MBIL Products, including the sale of Counterfeit MBIL Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming MBIL.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

24. MBIL re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 23.

25. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered MANOLO BLAHNIK Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MANOLO BLAHNIK Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from MBIL Products sold or marketed under the MANOLO BLAHNIK Trademarks.

26. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the MANOLO BLAHNIK Trademarks without MBIL's permission.

27. MBIL is the exclusive licensee of the MANOLO BLAHNIK Trademarks in the United States and globally. The U.S. registrations for the MANOLO BLAHNIK Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of MBIL's rights in the MANOLO BLAHNIK Trademarks and are willfully infringing and intentionally using counterfeits of the MANOLO BLAHNIK Trademarks. Defendants' willful, intentional and unauthorized use of the MANOLO BLAHNIK Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit MBIL Products among the general public.

28. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

29. MBIL has no adequate remedy at law, and if Defendants' actions are not enjoined, MBIL will continue to suffer irreparable harm to its reputation and the goodwill of the well-known MANOLO BLAHNIK Trademarks.

30. The injuries and damages sustained by MBIL have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit MBIL Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

31. MBIL hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit MBIL Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with MBIL or the origin, sponsorship, or approval of Defendants' Counterfeit MBIL Products by MBIL.

33. By using the MANOLO BLAHNIK Trademarks on the Counterfeit MBIL Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit MBIL Products.

34. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit MBIL Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

35. MBIL has no adequate remedy at law and, if Defendants' actions are not enjoined, MBIL will continue to suffer irreparable harm to its reputation and the goodwill of its MBIL brand.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE MANOLO BLAHNIK TRADEMARKS**

36.    MBIL hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37.    MBIL is the exclusive licensee of the MANOLO BLAHNIK Trademarks in the United States and globally.  The U.S. registrations for the MANOLO BLAHNIK Trademarks (Exhibit 1) are in full force and effect.  Additionally, the MANOLO BLAHNIK Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

38.    Upon information and belief, Defendants operating a Defendant Domain Name incorporating the MANOLO BLAHNIK Trademarks have acted with bad faith intent to profit from the unauthorized use of the MANOLO BLAHNIK Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the MANOLO BLAHNIK Trademarks.

39.    Defendants have no intellectual property rights in or to the MANOLO BLAHNIK Trademarks.

40.    Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

41.    MBIL has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the MANOLO BLAHNIK Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to MBIL.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

42.     MBIL hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 41.

43.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit MBIL Products as those of MBIL, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine MBIL Products, representing that their products have MBIL's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

44.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

45.     MBIL has no adequate remedy at law, and Defendants' conduct has caused MBIL to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, MBIL will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, MBIL prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the MANOLO BLAHNIK Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution,

marketing, advertising, offering for sale, or sale of any product that is not a genuine MBIL Product or is not authorized by MBIL to be sold in connection with the MANOLO BLAHNIK Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine MBIL Product or any other product produced by MBIL that is not MBIL's or not produced under the authorization, control, or supervision of MBIL and approved by MBIL for sale under the MANOLO BLAHNIK Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit MBIL Products are those sold under the authorization, control, or supervision of MBIL, or are sponsored by, approved by, or otherwise connected with MBIL;

d. further infringing the MANOLO BLAHNIK Trademarks and damaging MBIL's goodwill;

e. otherwise competing unfairly with MBIL in any manner;

f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for MBIL, nor authorized by MBIL to be sold or offered for sale, and which bear any trademark of the MBIL brand, including the MANOLO BLAHNIK Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other

domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit MBIL Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the MANOLO BLAHNIK Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine MBIL Product or not authorized by MBIL to be sold in connection with the MANOLO BLAHNIK Trademarks; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon MBIL a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, at MBIL's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to MBIL, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of MBIL's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of MBIL's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon MBIL's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants, currently or in the future, engage in the sale of goods using the MANOLO BLAHNIK Trademarks, including, but not limited to, any accounts associated with the Defendants listed on Schedule A; and

    b. disable any account linked to Defendants, linked to any e-mail addresses used by Defendants, or linked to any Defendant Domain Names.

5) That Defendants account for and pay to MBIL all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the MANOLO BLAHNIK Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that MBIL be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MANOLO BLAHNIK Trademarks and $100,000 per domain name incorporating the MANOLO BLAHNIK Trademarks pursuant to 15 U.S.C. § 1117(d);

7) That MBIL be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Dated this 26th day of October 2015.          Respectfully submitted,


                                                         /s/ Justin R. Gaudio_____
                                                         Kevin W. Guynn
                                                         Amy C. Ziegler
                                                         Justin R. Gaudio
                                                         Jessica L. Bloodgood
                                                         Greer, Burns & Crain, Ltd.
                                                         300 South Wacker Drive, Suite 2500
                                                         Chicago, Illinois 60606
                                                         312.360.0080
                                                         312.360.9315 (facsimile)
                                                         kguynn@gbclaw.net
                                                         aziegler@gbclaw.net
                                                         jgaudio@gbclaw.net
                                                         jbloodgood@gbclaw.net

                                                         *Counsel for Plaintiff*
                                                         *Manolo Blahnik International Limited*